## THE GEORGE A. HOYT.

*(District Court, S. D. New York. January, 1881.)*

1. ADMIRALTY — COLLISION — NEGLIGENCE — STEAM-BOATS WITH TOWS — AMENDMENT OF LIBEL.

As the steam-boat S., with her tow of about 30 boats, was rounding West Point, on the west side of the Hudson river, on her way up, the day being clear, the steam-boat C., with her tow, being just ahead of the S., and heading across the river to Magazine point, on the east side, the river here taking a sharp turn to the west, there were disclosed to the pilot of the S. the steamer G. A. H., with her tow, coming down the river close to the west side, a schooner coming down, before a light west wind, and another heading up, and the C., with her tow, in the position stated. The C. was taking the usual course in this narrow part of the river, the tide being strong flood, but the S., which had been gaining on her, tried to pass her on the west, or her port side. As she was lapping the S.'s tow the schooner got in her way, while trying to make her tack to the eastward, and the S. then was compelled, in order to avoid the schooner, to head still further to the west, and then to stop till the schooner got out of the way, the effect of which was to bring her tow dangerously near to the tow of the G. A. H. The end of the S.'s tow having taken a westward swing with the tide, came in collision with the port boat, the schooner J. L. N., on the first tier of the G. A. H.'s tow, thus causing the damage to the libellant's barge on the port side of the S.'s tow; the G. A. H., on seeing the S. change her course, having stopped, and slacked her starboard hawser, thus causing her tow to swing into the west bank.

*Held*, that the libellant's claim that the G. A. H. was in motion at the time of the collision and took a sudden sheer under the stern of the tow of the S. after passing, thus causing the collision, is against the weight of evidence.

That such a movement was wholly uncalled for by the situation, and without apparent motive, and that the libellant's witnesses may have been deceived on this point by the effect of the movement of their own tow.

That the collision was wholly due to reckless navigation of the S. in keeping on at full speed in a narrow part of the river, and trying to pass the C. while the river was so obstructed that the attempt could not be safely made without serious risk of collision with one or another of the vessels she was approaching.

Also *held*, that, the proof being that the S. did not keep anywhere near the eastern bank of the river, the libellant's motion to amend in that regard should be denied.

*W. R. Beebe*, for libellant.

*R. D. Benedict*, for claimant.

CHOATE, D. J. This is a suit brought to recover damages for injury to the libellants' barge Washington through a collision with the schooner Jane L. Newton, which was at the time of the collision in tow of the George A. Hoyt. The collision took place on the fourth of June, 1875, in the Hudson river, just above West Point. The Washington was in tow of the steam-boat Syracuse, and was one of a tow of about 30 boats, being the outside boat on the last tier but one on the port side. Immediately ahead of her was the barge Tompkins, and astern

FEDERAL·REPORTER.

of her the barge St. Nicholas. The Syracuse, with her tow, was going up the river. The George A. Hoyt, with her tow, was coming down. The day was fine and clear. The wind was light and westerly. The collision was about 11 o'clock in the forenoon. The libel is brought against the George A. Hoyt, the Syracuse, and the Jane L. Newton, but is only prosecuted against the George A. Hoyt. It charges her with too great speed, with not keeping well over on the west side of the river, and with taking a sudden and unnecessary sheer across the stern of the Syracuse tow after passing it, so as to bring the hawser under the bottoms of the boats in tow of the Syracuse, thereby bringing the schooner Jane L. Newton, which was on the port side of the first tier in the tow of the George A. Hoyt, into collision, first with the Tompkins, then with the Washington, doing her great injury, and then with the St. Nicholas.

The libel alleges that the tide was ebb. The answer avers that it was strong flood. There is no doubt upon the evidence, however, that the flood-tide had been running for an hour or two. The libellants insist that the George A. Hoyt was not over on the west side of the river; but on this point, also, the testimony is clearly with the steam-boat. She had been coming down, keeping as close as was prudent to the west bank, proceeding very slowly against a head-tide, and when the Syracuse and her tow came round the lamp at West Point the Hoyt and her tow were at that part of the river called Moore's Folly, heading down towards the government dock, and as close to the west side of the channel as it is usual for tugs with tows to be.

The libel alleges that the Syracuse, with her tow, hugged the *western* side of the river after turning the point. Upon the trial this was claimed by libellants' proctors to be a clerical error, and it was claimed that the intention was to allege that she was hugging the *eastern* side of the river. The libellants' application to amend was reserved till the cause should be heard, with leave then to ask for the amendment if the proofs should warrant it.

The testimony shows that the Syracuse, with her tow, was following another steam-boat, the Ceres, also with a tow, and was rapidly overtaking her. The Ceres first turned the point at the lamp, and when the Syracuse turned the point as she did, well over towards the western side of the river, and opened this reach of the river, which there turns nearly west, she had in sight the George A. Hoyt with her tow, stretching along the west bank by Moore's Folly, the Ceres and her tow, heading up for Magazine point, on the opposite bank of the river, a schooner coming down before the wind, and another

schooner beating up against the wind. The river at that place is narrow and the flood-tide strong, setting over towards the west bank. The usual and proper course of a tow going up on a flood-tide is, after passing the point close to the west bank, to head across for Magazine point, on the other side, and this course the Ceres was taking. The Syracuse, notwithstanding that the George A. Hoyt and her tow and the two schooners were in the river, and might interfere with her accomplishing her purpose successfully, undertook to pass the Ceres and her tow to the west, or on their port hand. Instead of heading up for the Magazine point, on the east side of the river, she took a course more westerly than the Ceres and about the middle of the river, and was coming up to and lapping the tow of the Ceres, when it became evident to her pilot that the schooner beating up the river was in her way. This schooner was tacking on the west side in order to stand over to the eastward, and, from losing the wind, or for some other reason, was longer in making the manoeuver than the pilot of the Syracuse calculated upon, and he was compelled, first, to sheer still further to the westward, and then to stop, in order to avoid the schooner and pass to the westward of her, and give her time to get out of the way on her eastward tack. This brought the Syracuse and her tow in dangerous proximity to the George A. Hoyt and her tow. When the schooner finally stood to the eastward the Syracuse passed her, the forward barge in her tow on the starboard side just grazing against the schooner.

As the Syracuse passed the schooner she sheered again sharply to the eastward, for the purpose, it may be presumed, of drawing her tow out of the way of that of the George A. Hoyt; but her tow had already taken a swing to the westward, the effect of her stopping and of the tide. When the pilot of the George A. Hoyt saw the Syracuse change her course he stopped his boat and slacked his starboard hawser, thus letting the boats in his tow swing into the bank, and they had no headway at the time of the collision. The end of the tow of the Syracuse, however, kept on with this swing to the westward, and the Tompkins, Washington, and St. Nicholas came in contact with the schooner Jane L. Newton, which was on the port side of the first tier in the tow of the George A. Hoyt. Several witnesses from the Syracuse and her tow testified that the George A. Hoyt was in motion at the time of the collision, and took a sudden sheer under the stern of the St. Nicholas after passing her, thus bringing the schooner down on the port side of the tow of the Syracuse, as alleged in the libel, but the weight of the testimony clearly is that the George

A. Hoyt and her tow had then stopped, and made no such shecr across the stern of the other tow.   Such a movement would have been wholly uncalled for by the situation in which the George A. Hoyt was, and, being without apparent motive, the evidence from the circumstances of the case greatly strengthens the direct testimony on this point.   And the testimony of these witnesses from the Syracuse and her tow can, without difficulty, be reconciled with the rest of the proofs upon the supposition that the effect which they saw and testified to was caused by the movement of their own tow instead of that of the tow of the George A. Hoyt.   Just before the vessels came together, the pilot of the Syracuse seems to have stopped his engine again, but too late to arrest the forward movement of his tow, and it had no tendency to check its swing towards that of the George A. Hoyt, if, indeed, this second stoppage did not aggravate the effect of the westward swing of his tow.

The evidence does not warrant the allowance of the amendment of the libel prayed for.   The libel, if amended as proposed, would be contrary to the evidence in this particular allegation, for upon the proofs the Syracuse did not keep on, or any where near, the eastern bank of the river.   The amendment cannot, therefore, be allowed. Nor is it satisfactorily explained how the error in the libel occurred.

In conclusion, it is only necessary to say that none of the faults charged against the George A. Hoyt are proven, and that on the evidence the collision was caused solely by the reckless and careless navigation of the Syracuse, in keeping on, at full speed, in this narrow part of the river, and attempting there to pass the Ceres, while the river was so obstructed by the George A. Hoyt and her tow, and the two schooners and the Ceres and her tow, that this manoeuver could not there be safely or prudently accomplished or attempted without serious risk of collision with one or another of those vessels. It is suggested in argument that the George A. Hoyt was not stopped soon enough.   This is not charged in the libel as a fault against her. It is, perhaps, inconsistent with the libel.   But it is not sustained by the evidence.   The proof is that she stopped promptly on the first appearance of danger.

Libel dismissed, with costs.